[No. 2226.]

## THE MERCANTILE NATIONAL BANK OF PUEBLO v. PEABODY.

**Bills and Notes—Collateral Security.**

Where certain notes were placed in a bank for collection to secure first a liability of the cashier of the bank upon a bond of the holder of the notes, and second, to secure a note by the holder to plaintiff, and the bank agreed to collect said notes and so apply the proceeds, when the bank had collected sufficient money on said notes to satisfy the liability of the cashier and pay off plaintiff's note plaintiff could maintain an action against the bank for the amount of his note, and he was not required to wait till the bond upon which the cashier was liable was actually paid off before bringing his suit.

*Appeal from the District Court of Pueblo County.*

Mr. CHAS. E. GAST and Mr. J. H. McCORKLE, for appellant.

Messrs. TELLER & DORSEY, for appellee.

GUNTER, J.

The facts herein are: J. R. Gordon was indebted to appellee in the sum of $500. Appellee desired immediate payment; Gordon, further time. Appellee agreed to the time if Gordon would give a negotiable note for the debt. Gordon told appellee, substantially, that he had left with the American National Bank—to whose liability appellant has succeeded—certain notes for collection; that he would give his note and would see Mr. Gibson, cashier of the bank, and have it secured "with notes that were held in the bank." After Gordon had talked with Gibson, appellee saw the latter at the bank and informed him what Gordon had stated. Gibson replied that what Gordon had said was true, and produced a large bundle of notes—those mentioned by Gordon—and directed appellee to examine them and determine if he wanted any of them for security. Appellee selected three notes, mentioned in the endorsement hereinafter set out. Gibson pronounced these notes good, and said: "He had some claim on Gordon, and he had to have enough to pay his claim, besides enough for the note. I (appellee) says, 'Will these notes be enough?' and he says 'Plenty,' and so he took these notes and put this endorsement on the note." The endorsement referred to is as follows:

"This note has lodged as collateral security the following notes, which are held subject to the following conditions:

"Note, J. B. Orman, dated February 12, 1895, for $1,250.00, payable 6 months after date;

"Notes, William Crook, dated March 8, 1895, for $300 and $275 each respectively, payable 3 months and 6 months after date.

"The conditions with which these notes are held as collateral as against this note are as follows:

"That when the bonds executed by Robert Gibson, on account the Mesa Hotel, are released and fully satisfied, and his liability discharged therefrom, then the funds arising from the collection of these notes are to be paid, first, to W. S. Peabody the amount of this note and interest, and an accounting made to J. R. Gordon for the balance.

"Robert Gibson, Cashier."

The note upon which this endorsement was made was given by Gordon to appellee for $500, due six months after date of the endorsement, to cover the indebtedness above mentioned from Gordon to appellee, and it was taken by appellee and an extension of the time given Gordon thereby in consideration of the foregoing endorsement upon the note.

The amount of the collateral notes was subsequently paid into the bank—whose cashier Gibson was—and went into what is designated as "Cashier's Account," which account is thus described by a witness of appellant, the former assistant cashier of the American National Bank, and such at the time of the transactions involved:

"Well, it is an account—say a person leaves a collection there and has no account with the bank, and probably had not had any transactions with the bank; it is simply credited to the cashier's account, and when he came in there would be a check made and signed Cashier, and he would be paid his money. * * * Yes, it would be a bank collection."

It was agreed by the above endorsement that the proceeds of the collection of the collateral notes—so far as necessary—remaining after Gibson should be

discharged from liability by reason of having signed the Mesa Hotel bonds, should be paid to appellee in satisfaction of his note. Prior to the bringing of this action there had been paid to the bank the amount of the collateral notes, $1,875, and it had been ascertained that the liability of Gibson on the bonds could not exceed $994.93. There was thus in the hands of the bank in excess of the amount necessary to meet any possible liability of Gibson $880.57, such excess being more than sufficient to discharge the note of appellee, principal and interest. As there could be no liability of Gibson upon which to apply this excess there was no reason for appellant bank retaining it. The condition upon which it was to be paid to appellee, to the extent of his note and interest, had been satisfied. Out of this excess appellee demanded payment of his note and interest, and being refused, brought this action to recover the amount of such demand upon the above agreement of endorsement. The trial was to court and jury. At the close of the evidence a verdict as directed by the court was returned for appellee for the amount claimed, and judgment entered accordingly. Therefrom is this appeal, and in support thereof appellant (defendant) contends that the contract of endorsement was the personal obligation of Gibson, and that there was sufficient evidence thereof to require the submission of the question to a jury. Further, that the action was prematurely brought, because Gibson had not been discharged from liability on the Mesa Hotel bonds at the time of the institution of the suit.

It is also insisted that error was committed in striking out a part of the answer.

Five witnesses testified. The facts herein above recited as those of the case appear largely from the testimony of appellee. Whether so or not, there is no conflict as to them. From the facts recited in the

opening of this opinion it appears that Gibson was the cashier of the bank, its real executive officer in the ordinary business of the bank; that the holding of these notes for collection and the promise to pay the proceeds thereof as directed by Gordon was in the line of such ordinary business; that in it, as he had apparent authority to do, he informed appellee that the bank held the notes belonging to Gordon for collection, and promised in the name of the bank, at Gordon's request—as he also had apparent authority to do—that from the collection of such notes on the condition named—the discharge of Gibson from liability on the Mesa Hotel bonds—to pay the note of $500 given by Gordon to appellee. In consideration of this promise contained in the endorsement, appellee took the Gordon note. As the bank made this promise—as it collected the collateral notes and held the proceeds thereof—it should now pay the note of appellee unless it is necessary to retain the funds to meet a liability of Gibson on the Mesa Hotel bonds.

Upon the contention that all of the funds collected should be held to protect Gibson on such liability appellant insists that this action is prematurely brought. The bank agreed after Gibson was discharged from liability on the bonds, to pay over the proceeds of the collection of the collateral, or so much thereof as might be necessary, to appellee on his note. It has in its hands more than enough to pay all possible liability of Gibson and the note of appellee. There is no reason for its retaining more of the collection than enough to meet the liability of Gibson. There is no possible liability of Gibson upon which to apply such excess. The substance of the condition as to the discharge of the liability of Gibson has been satisfied, and was so prior to the institution of this suit. The action was not prematurely brought.

No error was committed in striking out a part

of appellant's answer, as all that was material in the matter stricken was preserved by the denials remaining.

The judgment should be affirmed.

*Affirmed.*